2021 IL App (2d) -200453-U
No. 2-20-0453
Order filed December 22, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Jo Davies County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 05-CF-84 |
| ROY E. HUBBARD, | ) ) ) | Honorable William A. Kelly, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BIRKETT delivered the judgment of the court.
Justices Hutchinson and Brennan concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court did not abuse its discretion in denying defendant leave to file a successive postconviction petition claiming actual innocence based on an allegedly exculpatory remark by the victim during a video-recorded interview with investigators. First, the remark was not newly discovered evidence, as the entire recording was disclosed by the State during discovery, and thus defendant's attorney was aware of the remark. Second, since defendant did not provide context for the remark, he did not establish that it was likely to result in an acquittal had he opted for a trial rather than a guilty plea.

¶ 2   In June 2006, defendant, Roy E. Hubbard, pled guilty to aggravated criminal sexual assault

(720 ILCS 5/12-14(a)(2) (West 2004)).   He appeals from the denial of leave to file a successive

postconviction petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.*

(West 2018)). He contends that, because his proposed petition set forth a colorable claim of actual innocence, the trial court erred in denying him leave to file it. We disagree. We conclude that the evidence on which the petition relies—a segment of the victim's video-recorded interview with investigators—is not "new, material, noncumulative evidence" that "clearly and convincingly" demonstrates that, if defendant had forgone a guilty plea and gone to trial, he likely would have been acquitted. *People v. Reed*, 2020 IL 124940, ¶ 49. We therefore affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Defendant was charged by information in June 2005. In January 2006, the State brought a four-count amended information against defendant. Counts I through III each charged predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2004)) and count IV alleged aggravated criminal sexual assault. The alleged victim in all counts was T.G., defendant's stepdaughter, who was born on June 20, 2000. All four counts alleged acts of sexual penetration with T.G.

¶ 5      On July 15, 2005, defendant filed a discovery request seeking, *inter alia*, "[c]opies of any and all tape recordings, *video recordings*, *** or communications of any type made by or under authority of any police officers, the State's Attorney, or other law enforcement officials or social services agent." (Emphasis in original.) On August 11, 2005, the State announced that it had furnished all discovery "up until today's date," and on September 22, 2005, the State announced that discovery was complete. On November 9, 2005, the State filed a notice of "Intention to Offer Statements Pursuant to 725 ILCS 5/115-10 [(West 2004)]," stating that it intended to introduce video-recorded statements made by T.G. made on or about May 26, 2005.

¶ 6    On January 12, 2006, the trial court accepted defendant's plea of guilty to count IV and imposed the parties' agreed sentence of 47½ years' imprisonment. The State dismissed the remaining counts.

¶ 7    In May 2007, defendant filed *pro se* his initial postconviction petition. The trial court appointed counsel, who filed an amended petition claiming ineffective assistance of counsel. The amended petition incorporated the *pro se* petition and added a claim of ineffectiveness, *i.e.*, that prior counsel incompetently presented a motion to suppress statements. Postconviction counsel also added the claim that the trial court, in accepting defendant's guilty plea, did not admonish him per *People v. Whitfield*, 217 Ill. 2d 177 (2005), that he would be required to serve three years of mandatory supervised release (MSR) upon completing his prison term.

¶ 8    The State filed a motion to dismiss the petition. At the hearing, the State asserted that it had no objection to reducing defendant's prison sentence by the length of his MSR term. The trial court accepted the State's concession and reduced defendant's sentence to 44½years' imprisonment.

¶ 9    In 2013 and 2015, defendant sought leave to file further petitions under the Act. In both instances, the trial court denied leave to file. Defendant appealed from the denial of leave to file the 2013 petition, and we affirmed. See *People v. Hubbard*, 2014 IL App (2d) 130298-U.

¶ 10    On January 3, 2020, defendant filed a document entitled "Permission to File a Successive Petition for Post-Conviction Relief," seeking to raise claims of prosecutorial misconduct and actual innocence. Only the actual innocence claim is at issue in this appeal. That claim is not clearly stated in the proposed petition; we rely heavily on defendant's affidavit for our understanding of it.

¶ 11    According to defendant's affidavit, his parole officer approached him in May 2005 and said that the police wanted to speak with him. At the police station, defendant was interviewed by a police officer and a Department of Children and Family Services (DCFS) agent. The two said that they needed to talk to him about an accusation of sexual assault from T.G. When defendant said that he had nothing to say to them, they asked him to watch a "small part" of a video-recorded interview of T.G. In that portion, T.G. said that defendant had sexually abused her. The DCFS agent then told him that, "if [he] did not give a statement admitting to the contents of the Video Statement[,] that [his] wife would be arrested and charged with Child Endangerment and [his] Children would be placed in foster care." Defendant then admitted that he had abused T.G. In the years that followed his guilty plea, he learned that the remaining portion of the recording "could exonerate [him]." In 2019, "by way of the freedom of information act, [defendant] obtained a copy of the Video Tape Statement *** from the Law firm [that defendant] hired to represent [him] in 2005." The recording was sent to his father because prison regulations barred defendant from possessing it. After reviewing the recording, the father informed defendant "that [T.G.,] 'at the end of the Statement[, said] she told a lot of lies.' " Defendant averred that, if he had seen this part of the recording, he would not have confessed to the offense.

¶ 12    According to the affidavit of defendant's father, "near the end of the Tape recording[, T.G.] stated that she had 'told a lot of lies, or stories in her statement.' "

¶ 13    The petition described as follows the recording of T.G.'s interview. The recording "was approximately 15 minutes long, and according to [defendant's] father ***[,] approximately 3 minutes of the tape covered [T.G.'s] statement" accusing defendant of sexually abusing her. Following those three minutes were another three minutes that were "blacked out." After the

blacked-out portion was a nine-minute segment that contained T.G.'s statement that she had told a lot of lies.

¶ 14    In a brief written order, the trial court denied defendant leave to file his petition. The court ruled that defendant "fail[ed], as a matter of law, to set forth a colorable claim of actual innocence." Defendant filed a timely notice of appeal.

¶ 15                                    II. ANALYSIS

¶ 16    Defendant argues that his petition states a colorable claim of actual innocence. He claims that the nine-minute portion of T.G.'s interview containing her admission to telling lies was newly discovered evidence because he did not see that portion before 2019. He further asserts that this evidence, "if believed and not positively rebutted by the record, could lead to acquittal at a trial."

¶ 17    The State responds that the nine-minute portion of the recording is not newly discovered evidence because (1) the prosecution disclosed the recording months before defendant pled guilty and (2) defendant has provided no evidence to suggest that defense counsel did not see the entire recording. The State further contends that, even if the nine-minute portion were considered newly discovered evidence, defendant has failed to show that that portion would probably result in an acquittal at trial. Specifically, the State notes that defendant relies on a single line from that portion—T.G.'s remark that she " 'told a lot of lies, or stories' " in her interview—and provides no context from that portion or the remainder of the recorded interview.

¶ 18    In reply, defendant suggests that the nine-minute portion was newly discovered evidence if he had not known of it, regardless of whether his attorney was aware of it. Defendant further suggests: "If there was a blacked out screen following the portion of T.G.'s statement in which she made allegations against [defendant], it is reasonable to assume that anyone watching the tape would have assumed that was the conclusion of the tape's content." As to the State's argument

that T.G.'s comment was not itself compelling evidence, defendant argues that the State's case was heavily reliant on T.G.'s statements. Thus, "if T.G. admitted to being untruthful in her statement regarding [defendant's] contact toward her," "evidence *** in which T.G. admitted to lying in her statement would probably lead to a different result at trial."

¶ 19    The Act contemplates the filing of only one postconviction petition (*People v. Jackson*, 2021 IL 124818, ¶ 27), and leave of court is required for the filing of a successive petition (725 ILCS 5/122-1(f) (West 2018)). Leave of court is granted in two circumstances: (1) where the petitioner establishes cause and prejudice for failing to raise the claim in an earlier petition and (2) where the petitioner shows a fundamental miscarriage of justice based on actual innocence. *People v. Robinson*, 2020 IL 123849, ¶ 42; see also 725 ILCS 5/122-1(f) (West 2018) (setting forth the cause and prejudice test). Here, defendant claimed actual innocence in seeking leave to file his successive petition.

¶ 20    When a petitioner convicted after a trial raises an actual innocence claim, that claim must be "support[ed by] evidence [that is] new, material, noncumulative and, most importantly, of such conclusive character as would probably change the result on retrial." (Internal quotation marks omitted.) *People v. Washington*, 171 Ill. 2d 475, 489 (1996). In *Reed*, the supreme court recognized that a strict application of the *Washington* standard is "impractical" in cases where the defendant pled guilty, because, "[w]ithout the developed record produced by a trial, a court cannot determine whether the new evidence sufficiently undermines the evidence presented at trial such that it would probably change the result on retrial." *Reed*, 2020 IL 124940, ¶ 45. Therefore, "a successful actual innocence claim requires a defendant who pleads guilty to provide new, material, noncumulative evidence that clearly and convincingly demonstrates that a trial would probably result in acquittal." *Reed*, 2020 IL 124940, ¶ 49. "New" evidence is "evidence [that] was

discovered after the court accepted the plea and could not have been discovered earlier through the exercise of due diligence." *Reed*, 2020 IL 124940, ¶ 49.

¶ 21　Generally, leave to file a successive postconviction petition in which a defendant claims actual innocence "should be denied only where it is clear, from a review of the successive petition and the documentation provided by the petitioner that, as a matter of law, the petitioner cannot set forth a colorable claim of actual innocence." *People v. Edwards*, 2012 IL 111711, ¶ 24. "[D]enial of leave to file a successive postconviction petition alleging actual innocence is reviewed *de novo*." *Robinson*, 2020 IL 123849, ¶ 40.

¶ 22　The supreme court has not specifically addressed what standard governs a request for leave to file from a defendant who pled guilty and brings a postconviction claim of actual innocence. In *Reed*, leave-to-file was not the issue; the trial court had granted leave to file and denied the petition after an evidentiary hearing. *Reed*, 2020 IL 124940, ¶¶ 12, 14. Previously, in *Robinson*, 2020 IL 123849, ¶ 60, the supreme court held that, "[i]n assessing whether a petitioner has satisfied the low threshold applicable to a colorable claim of actual innocence, the court considers only whether the new evidence, if believed and not positively rebutted by the record, could lead to acquittal *on retrial*." (Emphasis added.) The defendant in *Robinson* had had a trial, and the court's standard was particularized to that situation. The State would have us apply the standard suggested by Justice Michael J. Burke in his special concurrence in *Reed*. He criticized the standard in *Robinson* as "so vague as to be virtually meaningless." *Reed*, 2020 IL 124940, ¶ 65 (Michael J. Burke, J., specially concurring). He argued that "leave to file should be granted only when the petitioner's supporting documentation raises the probability that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." (Internal quotation marks omitted.) *Reed*, 2020 IL 124940, ¶ 66 (Michael J. Burke, J., specially concurring).

¶ 23    We need not decide between the two standards because, under either one, the defendant's request for leave to file fails the general *Edwards* standard; in other words, "it is clear from a review of the petition and supporting documentation that, as a matter of law, the petition cannot set forth a colorable claim of actual innocence." *Robinson*, 2020 IL 123849, ¶ 44.

¶ 24    To begin with, we are unpersuaded that any portion of the T.G.'s video-recorded interview was newly discovered evidence. For purposes of an actual innocence claim, "[n]ewly discovered evidence is evidence that was discovered after trial and that the petitioner could not have discovered earlier through the exercise of due diligence." *Robinson*, 2020 IL 123849, ¶ 47. In his reply brief, defendant claims it makes no difference if the State disclosed the recording in discovery, because "there is no evidence to suggest that [his attorney] watched it all or that he showed it to [defendant]." He further states that we "should not consider it to be a lack of due diligence if [he] did not ask to see the entire tape, where there is no evidence that shows that he knew that the tape contained a segment in which T.G. admitted to telling 'lies or stories.' "

¶ 25    First, we are not persuaded that whether evidence is "newly discovered" depends on a defendant's personal awareness of it, regardless of his attorney's knowledge of it. Defendant has not cited authority for the notion or provided any supporting argument. " 'The failure to elaborate on an argument, cite persuasive authority, or present a well-reasoned theory *** results in forfeiture of the argument.' " *People v. Rivera*, 2020 IL App (2d) 171002, ¶ 11 (quoting *Trilisky v. City of Chicago*, 2019 IL App (1st) 182189, ¶ 54). Moreover, to the extent that defendant faults defense counsel for failing to tell him about the full recording, his claim is one of ineffective assistance of counsel, not actual innocence.

¶ 26    Second, we disagree with defendant's suggestion that "anyone watching the tape" and reaching the three-minute blacked-out portion of the recording would have naturally assumed that

they had reached the recording's end. A diligent attorney would have confirmed that the entire recording was immediately before the three-minute blank section.

¶ 27    Third, even if T.G.'s admission to telling lies was newly discovered evidence, defendant's petition could not be deemed to state a colorable claim of actual innocence. Defendant essentially asks that we treat T.G.'s comment about lying or telling stories as though it were the entirety of the newly discovered evidence. Such treatment would be inconsistent with the facts defendant alleges in his petition and its supporting documents. Defendant alleged that T.G.'s statement was part of the final nine minutes of the recorded interview. If a trial court were to admit T.G.'s statement, it would need to be within its context in the interview. Here, lacking any description of that context, we do not fully know what the claimed new evidence is—thus, we cannot determine the likelihood that it would result in acquittal.

¶ 28    Defendant would have us conclude that T.G.'s admission of lying or telling stories materially impeached her disclosure of sexual abuse. He argues that, "if T.G. admitted to being untruthful in her statement regarding [defendant's] contact toward her," "evidence *** in which T.G. admitted to lying in her statement would probably lead to a different result at trial." But defendant fails to demonstrate that T.G. admitted to being untruthful about *defendant's conduct*. If T.G. specifically stated that she had lied about that conduct, defendant's father would have said so in his affidavit. Instead, he quoted her admission without providing context to indicate the part of her statement to which she was referring.

¶ 29    Moreover, T.G.'s claim to have told lies and stories is not particularly telling when we consider her age. T.G. was born on June 20, 2000, and the recording was made on or about May 26, 2005, when she was less than five years old. We cannot expect that she would have described what happened to her with perfect clarity and consistency. See, *e.g.*, *People v. Bowen*, 183 Ill. 2d

103, 115 (1998) ("It is well known that child witnesses, especially the very young, often lack the cognitive or language skills to effectively communicate instances of abuse at trial."). Thus, the contextless statement by T.G. during her interview that she told many lies or stories is not "of such conclusive character as would probably change the result on retrial." (Internal quotation marks omitted.) *Washington*, 171 Ill. 2d at 489.

¶ 30                                      III. CONCLUSION

¶ 31      For the reasons stated, we affirm the trial court's denial of defendant's request for leave to file his successive postconviction petition.

¶ 32      Affirmed.