(No. 21556.—
THE CHICAGO AND EASTERN ILLINOIS RAILWAY COMPANY *et al.* Appellees, *vs.* THE SANITARY DISTRICT OF BLOOM TOWNSHIP *et al.* Appellants.

*Opinion filed December 23, 1932.*

HOWARD P. ROE, (ABBOTT, ABBOTT & BISHOP, of counsel,) for appellants.

STEVENS, CARRIER & GRIFFITH, (LEE W. CARRIER, and MELVIN L. GRIFFITH, of counsel,) for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

This cause comes on appeal from a judgment of the city court of Chicago Heights awarding a writ of *mandamus* against appellants, trustees of the Sanitary District of Bloom township, a municipal corporation, directing that they enact an ordinance disconnecting from that district certain territory described in the petition for *mandamus*. Appellants filed a demurrer to the petition, which was overruled, and, electing to abide their demurrer, the writ was issued as prayed.

The facts are not in dispute and are as follows: The Sanitary District of Bloom township was created under the provisions of "An act to create sanitary districts and to provide for sewage disposal," approved June 22, 1917. (Cahill's Stat. 1931, p. 1192.) On the second day of April, 1931, a petition was filed in the county court of Cook county under section 24 of that act, praying that the territory described in the petition be disconnected from the district. The district entered its appearance in the county court and filed an answer. On May 22, 1931, a hearing was had on the petition and answer, and on May 25 following, an order was entered calling an election to be held on June 18, 1931, for the purpose of submitting to the legal voters of the territory sought to be disconnected, the question whether such territory should be so detached. An election was held pursuant to that order and the directions of the statute. Twenty-nine votes were cast in favor of and one opposed to disconnecting the territory. On July 3, 1931, the county court of Cook county entered an order finding that the election had been held in accordance

with the forms of law, resulting in a vote in favor of detaching the territory, and ordering that the territory be disconnected upon the passage of an ordinance by the trustees of the sanitary district. A copy of the order of the county court was served on the trustees of the sanitary district, appellants in this cause, and they were requested to pass the necessary ordinance in compliance with the vote of the people of the territory. This they refused to do. Accordingly the petition for *mandamus* in this case was filed on March 23, 1932.

But one question arises here. It is whether the statute governing the matter vests discretion in the president and board of trustees of the sanitary district to pass or to refuse to pass an ordinance disconnecting territory under the circumstances appearing in this case. Appellants argue that such discretion does exist and that therefore no writ of *mandamus* will lie against them. On the other hand, appellees insist that after all proper steps, including a vote favoring the proposition to disconnect territory and the findings and order of the county court, have been taken and entered according to law, the president and trustees of the sanitary district have no discretion in the matter but are required to pass an ordinance detaching the territory.

Section 24 of the Sanitary District act provides that any contiguous territory located within the boundaries of a sanitary district organized under the act and upon the border of such district may be disconnected therefrom in the following manner: "Ten per cent or more of the legal voters resident in the territory sought to be disconnected from such district, may petition the county judge of the county in which the original petition for the organization of said district was filed, to cause the question of such disconnection to be submitted to the legal voters of such territory whether said territory shall be disconnected. Said petition shall be addressed to the county judge and shall contain a definite description of the boundaries of such

territory and recite as a fact, that there is no bonded indebtedness of such sanitary district incurred while such territory was a part of such sanitary district and that no special assessments for local improvements were levied upon or assessed against any of the lands within such territory or if so levied or assessed, that all of such assessments have been fully paid and discharged and that such territory is not, at the time of the filing of such petition, and will not be, either benefited or served by any work or improvements either then existing or then authorized by said sanitary district. Upon filing such petition in the office of the county clerk of the county in which the original petition for the formation of such sanitary district has been filed it shall be the duty of the county judge to call to his assistance the county judges of all counties in which portions of such sanitary district and the territory proposed to be disconnected is situated; such county judges shall constitute a commission and shall consider the boundaries of such territory and the facts upon which the petition is founded. * * * If such sanitary district, as originally organized, is located in one county only the county judge of such county shall act as a commissioner with like duty, power and authority, as nearly as may be hereby imposed upon and granted to said commissioners, and his decision shall be conclusive and not subject to review.

"Notice shall be given by the county judge of the time and place when and where all persons interested will be heard substantially as provided in and by section 1 of this act. The conduct of the hearing and the manner of conducting the subsequent election on the question whether such territory shall become disconnected and the issuance, reception, return and canvassing of the ballots shall be, as nearly as possible, in accordance with the provisions of section 1 of this act. * * * If a majority of the votes cast at such election shall be in favor of disconnection, and if the trustees of such sanitary district shall, by ordinance,

disconnect such territory, thereupon the county judge shall enter on (an) appropriate order in the records of the county court and thereafter such territory shall henceforth be deemed disconnected from such sanitary district." Cahill's Stat. 1931, p. 1198.

Counsel for appellants concede that all proceedings necessary to disconnect such territory, other than the passage of an ordinance therefor by the trustees, have been performed according to the provisions of the act, but they say that the language in section 24, "if the trustees of such sanitary district shall, by ordinance, disconnect such territory," vests in the board of trustees a discretion to pass such ordinance or not, as it chooses. Appellees, on the other hand, cite *People* v. *Bergin,* 340 Ill. 20, as conclusive against that position. Appellants in reply say that the language of the court in that case which supports the contention of appellees was not necessary to a decision of the case and so was *obiter dictum. People* v. *Bergin, supra,* was a *quo warranto* proceeding brought against the trustees of this same sanitary district. A demurrer was filed to their pleas of justification. The ground of that demurrer was the invalidity of the Sanitary District act of 1917. That attack was leveled against this provision of section 24 as well as against other provisions of the act. It was argued in support of the claimed invalidity of this provision of section 24 that there was thereby placed in the hands of the board of trustees an unreasonable power to refuse to accede to the decision of the majority of the inhabitants where they had voted for such detachment. This court there said: "It is evident from the language of the act that when a majority of the voters in the territory sought to be detached have voted for such detachment it is the duty of the trustees to pass such an ordinance, and they may be required to do so. They are not, therefore, possessed of arbitrary power to refuse so to do." This was a decision on a direct attack on the constitutionality of

the provision considered here. It was not *obiter dictum* but was necessary to the decision of the case.

Counsel for appellants call attention to the provisions of the act giving only those in the territory sought to be detached the right to vote on the question, and argue that they should not have the entire voice in the matter but the interests of the district at large should be considered. The act requires that there be first filed in the county court a petition showing that there is no bonded indebtedness against the district incurred while the territory was a part of that district; that no special assessments for local improvements had been levied against any of the lands within that territory, or if so levied had been fully paid, and that the territory is not at the time of the filing of the petition, and will not be, benefited or served by any work or improvement existing or authorized by the district. These are questions of fact which the county judge, as commissioner, is required to determine before the order of the county court is entered, either denying the petition or calling an election of the people in the district. If it appears on such hearing that the allegations of fact in the petition are not proved and that the territory sought to be detached will be benefited or served by any work or improvement existing or authorized, the county court is required to enter an order denying the prayer of the petition. It is thus apparent that the interest of the district is guarded by the hearing and order on the petition for detachment. The order calling an election is necessarily based on a finding of the county judge, as commissioner, that the facts alleged in the petition have been proved. It was evidently the intention of the framers of this statute that all questions pertaining to the welfare of the district or its right to further retain such territory shall be determined before the matter is submitted to a vote of the people of the territory sought to be detached. It is conceivable that, an election being called, a majority of the voters of the dis-

trict may prefer to remain in the district, and they are thus given the opportunity to express that preference.

A sanitary district of this character is a municipal corporation, created by legislative authority. It is a part of the machinery of government. Its functions are public. The property held by such corporation is public property in the hands of the trustees, as agents for the State, for the purposes designated in the act authorizing its creation and is therefore subject to the supervision and control of the legislature. This has long been the rule in this State and elsewhere. (*Wilson* v. *Board of Trustees,* 133 Ill. 443; *Bush* v. *Shipman,* 4 Scam. 186; *Laramie* v. *Albany,* 92 U. S. 307; *People* v. *Camargo School District,* 313 Ill. 321.) In the case last cited a provision of the School law permitted the question of detachment of territory from a community consolidated school district to be submitted to a vote of only the legal voters residing in the territory sought to be detached. This was held to be a valid enactment. In cases arising under section 24 of this Sanitary District act, where the interests of the district at large are not prejudiced by the withdrawal of territory therefrom and the approval of such detachment is voiced by a majority of the legal voters of such territory, it would give an unreasonable power into the hands of the trustees of the district to permit them to nevertheless refuse to pass the ordinance provided by the statute. It is the long recognized duty of courts to declare the constitutionality of acts of the legislature if such can reasonably be done. We adhere to the decision in *People* v. *Bergin, supra,* and are of the opinion that it controls the decision of the question raised in this case.

The city court of Chicago Heights did not err in issuing the writ of *mandamus.* Its judgment will therefore be affirmed.

*Judgment affirmed.*