LOUISE R. WANLESS, Plaintiff-Appellee, v. ROBERT WRAIGHT *et al.*, Defendants-Appellants.

Third District  No. 3—89—0712

Opinion filed August 2, 1990.

Elliff, Keyser, Oberle & Davies, of Morton (Thomas E. Davies, of counsel), for appellants.

Frank M. Wanless and Annette L. Wanless, both of Morton, for appellee.

JUSTICE STOUDER delivered the opinion of the court:
The defendants, Robert C. Wraight and the Village of Morton, ap-

peal from the entry of a decree granting the plaintiff, Louise R. Wanless, a permanent injunction and quieting title in a disputed strip of real estate. We affirm.

This dispute concerns the location of the southern and eastern boundary between the plaintiff's property and property acquired and used by the Village of Morton. Robert Wraight was joined as a defendant because he is the superintendent of public works for the village. The plaintiff owns three adjoining lots which are bordered on the north by Jefferson Street and on the west by Plum Street. From west to the east the lots are designated as 17, 16, and 15. Lot 14, which is owned by the village and used as a parking lot, lies to the east of plaintiff's lot 15. Lots 9, 8, 7 and 6 border plaintiff's property to the south and are also owned by the village for use as a parking lot.

The plaintiff acquired lot 15 in 1951 and lots 16 and 17 in the late 1950's. The plaintiff's home and her husband's law office are located on lot 15. In 1954, the plaintiff's home was remodeled. As part of the remodeling, an addition was added to the east side of the house. The east wall of this addition is located on the east plat line of lot 15. The eaves of the house extend over lot 14. In the early 1960's, a decorative concrete block screen was placed near the southeast corner of the plaintiff's addition. This structure sits almost totally on lot 14 and lies within the disputed area. The record also shows the existence of an old wire fence extending along the south half of lot 15's east lot line. This fence sits for the most part almost directly on the plat line between lots 15 and 14, and runs parallel to a wooden fence installed by the village on lot 14.

On October 20, 1954, the village acquired lot 14. There was a single-family residence located on this property. In the late 1950's or early 1960's, the residence was removed from lot 14 and the property converted to a parking lot. The village placed railroad ties along the border between lots 14 and 15. The railroad ties were located approximately 2½ feet east of the actual plat line between lots 14 and 15. In the early 1970's the village installed a wooden fence along the south half of lot 14's west border. The fence was placed along the same line north and south as the railroad ties and was thus also approximately 2½ feet east of the actual lot line.

The southern border of plaintiff's property is enclosed in part by a chain link fence which begins at the southeast corner of a garage located at the south end of lot 17. The south wall of the garage sits very close to the south plat line of lot 17. The fence jogs south from the corner of the garage approximately a foot and a half, then con-

tinues in an easterly direction parallel to the southern boundary of lots 16 and 15. This chain link fence replaces an old wire fence the village had removed early on in this dispute. The final section of the fence line is composed of a wooden fence which runs to the south end of the wooden fence the village placed on lots 14 and 6. These fences are located south of the south plat line of plaintiff's property on lots 9, 8, 7 and 6. The village has apparently owned lots 9 and 6 for some time. Lot 9 lies directly south of plaintiff's lot 17. In 1987, the village acquired lots 8 and 7, which are located south of plaintiff's lots 16 and 15, respectively. The northwest corner of lot 6 touches the southeast corner of lot 15.

The dispute in the instant case arose when the village decided to convert lots 8 and 7 into a parking lot, and a survey revealed that plaintiff was encroaching on the northern portions of lots 9, 8, 7 and 6 and the west portion of lot 14. The village notified the plaintiff that the old wire fence and the wooden fence along her southern lot line were located on the village's property and would have to be moved. During negotiations concerning the dispute, the village tore down the old wire fence along the plaintiff's south boundary. The plaintiff then filed this action to enjoin the village from removing any more of her fencing and to quiet title in the strip of property along the southern and eastern borders of her property that she claimed by adverse possession. The village filed a counterclaim against the plaintiff alleging that the eaves of her house and the concrete block screen encroached on lot 14 and that the plaintiff's fencing encroached on lots 6 through 9.

Following a series of hearings, the trial court found that the plaintiff had acquired the claimed property by adverse possession. The defendants appeal, claiming that the trial court's decision was against the manifest weight of the evidence and that a claim of adverse possession cannot be asserted *vis-a-vis* lot 14 because it was municipal property used for a public purpose and the plaintiff did not prove adverse possession for the 20-year period previous to such use.

■ It is well settled that the adverse possession which is required to continue a bar to the assertion of a legal title by the owner must include these five elements: it must be (1) hostile or adverse, (2) actual, (3) visible, notorious and exclusive, (4) continuous, and (5) under claim of ownership. (*Schwartz v. Piper* (1954), 4 Ill. 2d 488, 122 N.E.2d 535.) Adverse possession cannot be made out by inference or implication, for the presumptions are all in favor of the true owner, and the proof to establish it must be strict, clear, positive and unequivocal. (*Mercer v. Wayman* (1956), 9 Ill. 2d 441, 137 N.E.2d 815.)

The proof must be such as to establish with reasonable certainty the location of the boundaries of the tract to which the five elements of adverse possession are applied, and all of the elements must extend to the tract so claimed. *Joiner v. Janssen* (1981), 85 Ill. 2d 74, 421 N.E.2d 170.

■■ Where the trial court has found that a plaintiff has established the necessary elements of adverse possession, the trial court's finding will not be reversed unless the defendants are able to show that those findings are against the manifest weight of the evidence. *Tapley v. Peterson* (1986), 141 Ill. App. 3d 401, 489 N.E.2d 1170.

■■ On review of the record, we find the defendants in this case have failed to show that the trial court's findings are against the manifest weight of the evidence. The dispute over the southern boundary of plaintiff's property centered on an old wire fence. The plaintiff testified that a portion of this fence was replaced by a wooden fence, which runs along the same line as the old wire fence did. The village itself took the position that the old wire fence and the wooden fence were on the village's property. It requested the fences be moved and then proceeded to tear down the wire fence. The chain link fence which the plaintiff put up to replace the wire fence runs along the same line east and west as the wooden fence. The testimony presented by the plaintiff and the defendants shows that the wire fence was very old. Its extremely dilapidated condition supports the trial court's finding that the plaintiff had acquired title by adverse possession to the claimed portions of lots 6 through 9.

Similarly, the evidence supports the plaintiff's claim to title by adverse possession of the disputed portion of lot 14. The plaintiff placed a decorative concrete block screen on the claimed portion of lot 14 and maintained the area between the wire fence and the wooden fence installed by the village. Plaintiff has used and occupied this strip of lot 14 as her own in excess of 20 years. The defendants have not pointed to facts showing the trial court's determination of this issue was against the manifest weight of the evidence.

■■ ■ The defendants argue that adverse possession will not lie against a municipality and that therefore plaintiff's claim to the western strip of lot 14 must fail. The issue is whether the village is exempt from the statute of limitations for commencing an action for the recovery of lands (Ill. Rev. Stat. 1989, ch. 110, par. 13—101). In *Brown v. Trustees of Schools* (1906), 224 Ill. 184, 79 N.E. 579, the Illinois Supreme Court stated in pertinent part:

"The rule that statutes of limitation do not run against the State also extends to minor municipalities created by it as local

governmental agencies, in respect to governmental affairs affecting the general public. The exemption extends to counties, cities, towns and minor municipalities in all matters respecting strictly public rights as distinguished from private and local rights, but as to matters involving private rights they are subject to statutes of limitation to the same extent as individuals. [Citations.]

\*\*\* [T]he public right and public use must be in the people of the State at large, and not in the inhabitants of a particular local district. \*\*\* [T]here is a well founded distinction between cases where the municipality is seeking to enforce a right in which the public in general have an interest in common with the people of such municipality, and cases where the public have no such interest; \*\*\*.

There are numerous cases where it has been held that municipalities or minor political subdivisions of the State are not subject to limitations laws in respect to streets and public highways \*\*\*, but streets and highways are not for the use of the inhabitants of any municipality or locality alone, but for the free and unobstructed use of all the people in the State. Such rights are clearly distinguishable from the rights or interests of the inhabitants of a locality in property acquired for a mere local use, such as city offices, a library site or the use of a fire department. Such property is held and used for strictly local purpose." *Brown v. Trustees of Schools* (1906), 224 Ill. 184, 186-88, 79 N.E. 579, 580.

Thus, municipalities are not afforded a blanket exemption from statutes of limitation. In the instant case, we do not view the use of lot 14 as a parking lot to fall within the definition of public use. Under the circumstances, the village was not exempt from the statute of limitations and, therefore, the plaintiff could obtain title to the disputed strip of lot 14 by adverse possession.

In sum, we find the trial court's determination was not against the manifest weight of the evidence. Therefore, the judgment of the circuit court of Tazewell County is affirmed.

Affirmed.

BARRY and SCOTT, JJ., concur.