FIFTH DIVISION
June 22, 2007

No. 1-06-1230

| | | |
|---|---|---|
| JOAN L. MILLER and RICHARD A. MILLER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Cook County. |
| | ) | |
| v. | ) | No. 03 CH 06001 |
| | ) | |
| METROPOLITAN WATER RECLAMATION | ) | |
| DISTRICT OF GREATER CHICAGO | ) | |
| and THE CITY OF EVANSTON, | ) | |
| | ) | |
| Defendants-Appellees | ) | |
| | ) | |
| and | ) | |
| | ) | |
| (Evanston Wilmette Golf Course Association, | ) | |
| Descendants and Assigns of Laura N. Kline, | ) | |
| Unknown Owners and Non-Record Claimants, | ) | Honorable |
| | ) | Julia M. Nowicki, |
| Defendants). | ) | Judge Presiding. |

PRESIDING JUSTICE O'BRIEN delivered the opinion of the court:

Plaintiffs, Richard and Joan Miller, appeal the order of the circuit court granting summary judgment in favor of defendants, Metropolitan Water Reclamation District of Greater Chicago (the District) and the City of Evanston, on plaintiff's complaint for adverse possession. We affirm.

In 1971, plaintiffs, Richard and Joan Miller, purchased a house adjacent to land (the subject property) belonging to the District. The District leases the subject property to the City of Evanston with the right of reentry. The City of Evanston in turn subleases the subject property to the Evanston Wilmette Golf Course Association, a private corporation that operates the Peter

No. 1-06-1230

Jans Community Golf Course. Plaintiffs discovered that portions of their garage and other parts of their residential property were built or sited on the subject property. For purposes of this appeal, plaintiffs do not dispute that the District holds legal title to the subject property.

In 1996, the District notified plaintiffs of the encroachment and requested the City of Evanston to take corrective action to eliminate the encroachments. In 2001, plaintiffs indicated that they wanted a permit for the encroachments that would require permission from the City of Evanston, the golf course, and the District. Plaintiffs later abandoned that request.

Plaintiffs then filed a complaint alleging adverse possession against the District and the City of Evanston (collectively referred to as defendants), as well as the Evanston Wilmette Golf Course Association. The Evanston Wilmette Golf Course Association was served but never appeared. The parties filed cross-motions for summary judgment. The District argued in relevant part that adverse possession will not lie where, as here, a municipal corporation is holding the subject property for the use of the public of the state at large. Plaintiffs responded that the District did not hold the subject property for public use by the people of the state. The trial court granted summary judgment in favor of defendants. Plaintiffs appeal pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)).

Summary judgment is appropriate where the pleadings, depositions and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Adams v. Northern Illinois Gas Co., 211 Ill. 2d 32, 43 (2004). Review is de novo. Adams, 211 Ill. 2d at 43.

To establish title by adverse possession as provided by section 13-101 of the Limitations

No. 1-06-1230

Act, the party must possess the disputed land for 20 years.   735 ILCS 5/13-101 (West 2000).

The party must prove that the 20 years of possession was: "(1) continuous; (2) hostile or adverse;

(3) actual; (4) open, notorious and exclusive; and (5) under a claim of title inconsistent with that

of the true owner." General Iron Industries, Inc. v. A. Finkl & Sons Co., 292 Ill. App. 3d 439,

441 (1997).

This case involves a claim of adverse possession against land held by a municipal

corporation.  The 20-year statute of limitations runs against a municipal corporation with respect

to property held in a private capacity, but not with respect to property held in trust for the public.

The supreme court case Brown v. Trustees of Schools, 224 Ill. 184 (1906), is informative.  In

Brown, the trustees sued to recover possession of part of a schoolhouse lot to which the trustees

held legal title for the use of the school district.  A private citizen, Frank Brown, claimed title by

adverse possession on the basis that he and his predecessors in title had been in the open,

exclusive and adverse possession of that part of the schoolhouse lot for more than 20 years.  The

Illinois Supreme Court stated:

> "The rule that statutes of limitations do not run against the state also extends to minor
>
> municipalities created by it as local governmental agencies, in respect to governmental
>
> affairs affecting the general public.  The exemption extends to counties, cities, towns, and
>
> minor municipalities in all matters respecting strictly public rights as distinguished from
>
> private and local rights, but as to matters involving private rights they are subject to
>
> statutes of limitation to the same extent as individuals. [Citations.]
>
> The question *** is whether there is an implied exemption from the statutes of

-3-

limitation in favor of trustees of schools with respect to property held for the use of a particular school district, and that depends upon the meaning of the term 'public rights,' as used in the decisions. *** [T]he public right and public use must be in the people of the state at large, and not in the inhabitants of a particular local district. *** [T]here is a well-founded distinction between cases where the municipality is seeking to enforce a right in which the public in general have an interest in common with the people of such municipality, and cases where the public have no such interest ***.

There are numerous cases where it has been held that municipalities or minor political subdivisions of the state are not subject to limitation laws in respect to streets and public highways [citation], but streets and highways are not for the use of the inhabitants of any municipality or locality alone, but for the free and unobstructed use of all the people in the state. Such rights are clearly distinguishable from the rights or interests of the inhabitants of a locality in property acquired for a mere local use, such as city offices, a library site, or the use of a fire department. Such property is held and used for strictly local purposes." Brown, 224 Ill. at 186-88.

The supreme court held that "[t]he people of the State in general have no interest, in common with the inhabitants of a school district, in the school house site or the proceeds of it." Brown, 224 Ill. at 189. Accordingly, the supreme court held that adverse possession could lie against the property. Brown, 224 Ill. at 189. Brown remains good law. See Wanless v. Wraight, 202 Ill. App. 3d 750 (1990) (holding that parking lot did not fall qualify as a "public use" as defined by Brown.)

Thus, the term "public use," as defined by Brown, means that the people of the state at large must have a general interest in the property at issue. It does not mean that the public necessarily must have total and unlimited access to the property, but rather that the property is for the general benefit of the people of the state. If the property is for such "public use", then adverse possession cannot lie against the property.

As discussed, the District holds legal title to the subject property. The District's predecessor, the Sanitary District of Chicago, was organized on May 29, 1889, under "An Act to create sanitary districts, and to remove obstructions in the Des Plaines and Illinois rivers." See People ex rel. Longenecker v. Nelson, 133 Ill. 565 (1890). The act created certain districts made up of areas of contiguous territory, and empowered those districts to construct and maintain a common outlet for the drainage and sewage of the municipalities within the limits of each district. See Nelson, 133 Ill. at 580. The supreme court noted that "[t]he object of the system of drainage proposed by said act is to prevent the drainage and sewage of the city [of Chicago] and its environs being carried into Lake Michigan, thereby contaminating the waters of the lake. This result is to be reached by cutting a channel which will give an outlet for the drainage and sewage of the city in the direction of the Des Plaines and Illinois rivers, and which will also cause a large flow of water from the lake through the proposed artificial channel into those rivers for the purpose of diluting the sewage, and rendering it innocuous to the people living along the course of those streams." Nelson, 133 Ill. at 581. Clearly, this was intended to preserve the health of the people of Chicago, those persons living around Lake Michigan and along the Des Plaines and Illinois rivers, and the people of the state.

No. 1-06-1230

The public purpose continues today, as "the State of Illinois \*\*\* has delegated to the Metropolitan Sanitary District of Greater Chicago the police power to protect the public health with respect to certain waters.  More specifically, the District is authorized by statute to prevent the pollution of Lake Michigan and other waters within its jurisdiction."  Village of Glencoe v. Metropolitan Sanitary District of Greater Chicago, 23 Ill. App. 3d 868, 872 (1974).

The supreme court also has noted:

> "A sanitary district of this character is a municipal corporation, created by legislative authority.  It is a part of the machinery of government.  Its functions are public.  The property held by such corporation is public property in the hands of the trustees, as agents for the State, for the purposes designated in the act authorizing its creation \*\*\*."  Chicago & Eastern Illinois Ry. Co. v. Sanitary District of Bloom Township, 350 Ill. 542, 548 (1932).

Thus, the subject property, to which the District holds title and to which it retains the right under the lease to reenter, is public property for the use and benefit of the people of the state.  As such, it is not subject to adverse possession.

Plaintiffs argue, though, that the subject property is currently being used  as a golf course, and that the property "thus lost whatever public use character it might have had, because it is part of a proprietary business."  In support, plaintiffs cite Brown, which held that "if the State becomes a partner with individuals, or engages in business, it divests itself of its sovereign character and is subject to [the adverse possession statute]."  Brown, 224 Ill. at 186.  However, unlike in Brown, which involved a school site to which the people of the state at large had no

-6-

general interest in common with the inhabitants of the school district, the subject property here was subleased to the Evanston Wilmette Golf Course Association, which operates a golf course thereon that is open to all persons in the state. As such, the people of the state at large have a continuing general interest in the subject property during the leasehold and, therefore, the subject property retains its public character.

Plaintiffs insist that "the [subject] property is not held for public use because the District leased the property and property alienated in that manner cannot be classified as property for public use." In support, plaintiffs cite Chanslor-Western Oil & Development Co. v. Metropolitan Sanitary District of Greater Chicago, 131 Ill. App. 2d 527 (1970). Chanslor-Western Oil addressed whether the District unreasonably withheld consent to a sublease. Chanslor-Western Oil did not involve adverse possession and thus is not relevant to the issues presented here.

Plaintiffs also cite Sanitary District of Chicago v. Rhodes, 386 Ill. 269 (1944). Rhodes addressed the question whether the main channel prism in Du Page and Lockport townships was taxable. Rhodes did not involve adverse possession and is inapplicable to the case at bar.

In sum, as the subject property is for public use, plaintiffs' complaint for adverse possession fails. Accordingly, we affirm the order granting summary judgment in favor of defendants.

Affirmed.

GALLAGHER and O'MARA FROSSARD, JJ's concur.