2024 IL App (1st) 232399-U

THIRD DIVISION
October 9, 2024

No. 1-23-2399

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

**IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT**

| | |
|---|---|
| KOPPERS INC., | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiff-Counter-Defendant-Appellee, | ) Cook County |
| | ) |
| v. | ) No. 2019 CH 13558 |
| | ) |
| CITY WIDE DISPOSAL, INC., | ) |
| | ) |
| Defendant-Counter-Plaintiff-Appellant, | ) |
| | ) |
| CITY WIDE DISPOSAL, INC., | ) |
| | ) |
| Third-Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO; UNKNOWN OWNERS and NON-RECORD CLAIMANTS, | ) |
| | ) Honorable |
| | ) Allen Price Walker |
| Third-Party Defendant. | ) Judge, Presiding. |
| | ) |

JUSTICE D. B. WALKER delivered the judgment of the court.
Presiding Justice Lampkin and Justice Reyes concurred with the judgment.

**ORDER**

¶ 1    *Held*: We affirm the judgment of the circuit court dismissing defendant's counterclaims and granting summary judgment in favor of plaintiff on its trespass claim. We also find that defendant's affirmative defense of *laches* is without merit.

¶ 2    Defendant City Wide Disposal, Inc. (City Wide) appeals the judgment of the circuit court dismissing City Wide's counterclaims for adverse possession and prescriptive easement, granting summary judgment in favor of plaintiff Koppers Inc. (Koppers) on its trespass claim and against City Wide on its affirmative defense of *laches*, and ordering City Wide to remove its equipment from the disputed property. On appeal, City Wide contends that 1) dismissal of its counterclaims was improper where the disputed property was leased by a private entity for private purposes, and City Wide satisfied the elements of adverse possession and prescriptive easement, and 2) granting summary judgment was erroneous where City Wide openly and notoriously possessed the disputed property, and a question of fact exists on whether Koppers was diligent in discovering City Wide's encroachment. For the following reasons, we affirm.

¶ 3                            I. BACKGROUND

¶ 4    The Metropolitan Water Reclamation District of Greater Chicago (the District) is an independent unit of local government created by the Metropolitan Water Reclamation District Act (Act) (70 ILCS 2605/1 *et seq.* (West 2022)). Pursuant to the Act, the District is charged with collecting and treating sewage and industrial waste, protecting waterways, and reducing flooding for an area encompassing most of Cook County. The District provides this service by operating and managing 554 miles of intercepting sewers and 76 miles of navigable waterways.

¶ 5    In 2004, the District was given the additional responsibility of managing stormwater in Cook County. Accordingly, it devised the Tunnel and Reservoir Plan (TARP), also known as Deep Tunnel, to reduce flooding, improve the water quality of Chicago area waterways, and protect

Lake Michigan from pollution caused by sewer overflows. TARP captures and stores stormwater and sewage that would normally overflow from sewers into waterways, and then treats the stored water before releasing it. TARP consists of four tunnel systems totaling 109 miles.

¶ 6    Most of the property owned by the District is located along three channels: the Main Channel (a/k/a the Chicago Sanitary & Ship Canal), the North Shore Channel, and the Cal-Sag Channel. These channels were built to prevent wastewater from entering Lake Michigan. Instead, wastewater flows into a District plant for treatment, and the treated water dilutes naturally as it flows through the Des Plaines, Illinois and Mississippi river systems. The District owns and operates seven wastewater treatment plant facilities, and these facilities service over 5 million people in Cook County.

¶ 7    The District owns Main Channel Parcel 39.07, the property at issue in this case. Parcel 39.07 borders the Main Channel and contains the following District infrastructure: 1) Southwest Side Intercepting Sewer #1 and a manhole for access; 2) Laramie Avenue Outfall Sewer and an associated Tide Gate structure; 3) a District monitoring well; and 4) a storm drain servicing adjacent Edmier Road, which discharges into the Main Channel.

¶ 8    In April 1944, the District agreed to lease Parcel 39.07 to Louis C. Ruthy and Bernard C. Ruthy for 75 years. The Ruthys operated their business, the Metropolitan Petroleum Company, on the property. On June 1, 1984, the lease was assigned to Koppers' predecessor, Koppers Company, Inc. On June 1, 2017, pursuant to the statutory leasing process, the District and Koppers executed the current 39-year lease. Koppers operates a manufacturing plant on the property.

¶ 9    The leases executed in 1944 and 2017 contain similar provisions relating to the District's ownership and use of Parcel 39.07. Both leases provide that the lessee "expressly" understands that the District has constructed or installed drains, outlets, sewers and shafts on or beneath the

property, and the District continues to operate and maintain such infrastructure. Under each lease, the lessee also agreed not to use or occupy the property in a manner that would damage the District's structures. Furthermore, the District retained the authority to enter upon and use portions of the premises to construct, repair, or operate its sewers, drains or other structures or appurtenances necessary to further the District's "corporate purpose."

¶ 10    The current lease also requires Koppers to "participate in a pilot program to be designed and overseen by Argonne National Labs whereby trees will be installed and cultivated onsite in an effort to remediate existing surface and subsurface contamination at the site." The District subsequently approved implementation of the Phytoremediation Plan, subject to certain conditions. These conditions included the installation of a physical barrier around the planting areas "to ensure that samplings/plantings/contaminated soils contained therein do not enter the [Main Channel]," keeping the access area to the District's TARP drop shaft at the western end of the leasehold "as stone, asphalt, or concrete" to minimize any damage to plantings District employees may cause while accessing the drop shaft, and incorporating the storm drain serving Edmier Road, which runs under the leasehold and discharges into the Main Channel, to ensure that the drain is not damaged.

¶ 11    In 2018, pursuant to the Phytoremediation Plan, Koppers commissioned a survey of the leased property. The survey revealed that City Wide had deposited large piles of asphalt shingles, wood, carpet and other materials onto Parcel 39.07. City Wide operates a dumpster rental and recycling center at 5001 W. 40th Street in Cicero, Illinois, which is located to the east of, and adjoins, Parcel 39.07. The deposits from City Wide prevented Koppers from implementing the Phytoremediation Plan at the eastern portion of the parcel.

¶ 12     On November 11, 2019, Koppers filed a complaint for injunctive relief against City Wide. In the complaint, Koppers alleged that it had informed City Wide of its encroachment onto Parcel 39.07 in September 2018, and City Wide "agreed that its equipment and material were encroaching" onto the property. Koppers further alleged that on October 2, 2018, its attorney Kathryn Leonard sent a letter to City Wide's owner, Anthony Barbara. She demanded that City Wide remove its equipment and material from Parcel 39.07 by March 29, 2019. She explained that Koppers needed complete access to the area to comply with its obligations under the lease.

¶ 13     Koppers alleged that instead of complying with Leonard's request, City Wide "continued to occupy [the area] and increased the number and height of the piles of wood, asphalt shingles and garbage" at that location. Koppers sent another letter to City Wide on November 11, 2019, but City Wide did not respond. The complaint alleged counts of trespass, nuisance and negligence, and sought removal of all City Wide equipment and materials from Parcel 39.07 by March 31, 2020. Koppers also sought an order for City Wide "to cease any and all future encroachment or trespass onto Parcel 39.07," as well as compensatory damages and attorney fees and costs.

¶ 14     On February 22, 2020, City Wide filed its answer to the complaint, as well as its affirmative defenses and counterclaims against Koppers. City Wide claimed that the counts in Koppers' complaint were barred by adverse possession, prescriptive easement, the statute of limitations, and *laches*. City Wide's counterclaims alleged one count of adverse possession pursuant to section 13-101 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/13-101 (West 2022)), in that City Wide has been in exclusive, continuous, hostile use of that portion of Parcel 39.07 for more than 20 years. Alternatively, the counterclaim alleged a prescriptive easement in the parcel.

¶ 15     That same day, City Wide also filed a third-party complaint for declaratory judgment against the District. The complaint contained counts of adverse possession and prescriptive

easement. City Wide sought a judgment declaring it the owner of the disputed portion of Parcel 39.07, to quiet title to that property, and to declare City Wide the absolute legal owner of a prescriptive easement in and to that property.

¶ 16 The District filed a motion to dismiss City Wide's third-party complaint pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2022)). The District argued that dismissal was proper because the land in question was "public property for the use and benefit of the people of the state," and City Wide's claims to the property would violate the Act and public policy. Koppers subsequently filed a section 2-619 motion to dismiss City Wide's counterclaims, joining and incorporating by reference the entirety of the District's motion. The trial court granted the motions, finding that if City Wide prevailed on its claims of adverse possession or prescriptive easement, the Act would be rendered "ineffective." The court denied City Wide's motion for an interlocutory appeal pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016).

¶ 17 The matter proceeded on Koppers' claims of trespass, nuisance and negligence against City Wide. Anthony Barbara, Ed Staudacher, Edward Dvorsky, Jason Bakk, and Kathryn Leonard were deposed in connection with the action.

¶ 18 Anthony Barbara testified that City Wide has been operating as a business since 1999. Barbara and his father own the City Wide property next to Parcel 39.07 through FJS, a company in which they are the sole partners. Barbara became a partner in 2005. Before that time, his father had a different FJS partner. Barbara testified that prior to 2005, his father's partner had operated a concrete crushing operation on the City Wide property and Barbara would visit the property 12 to 20 times per year to monitor the operations. In 2002, Barbara observed that concrete from the concrete crushing operation would sometimes "shift" towards the northeast corner of Parcel 39.07.

¶ 19    Barbara testified that City Wide moved its own operations onto the City Wide property in 2005 because the business had outgrown its old site at 3910 South Loomis. He stated that City Wide began operating in the northeast corner of Parcel 39.07, which was north and east of a retaining wall, in 2004. City Wide stored trailers, trucks and dumpsters in the area.

¶ 20    Ed Staudacher testified that he was the Assistant Director of Maintenance and Operations for the District. He acknowledged that he was aware in 2005 that City Wide drove its vehicles on portions of Parcel 39.07 and deposited materials onto the property, but he "was not aware of anything *** before 2005." Staudacher denied that City Wide has "been in possession for over 20 years." He was not aware of any activities by City Wide that interfered with the District's use of the property.

¶ 21    Edward Dvorsky testified that he was employed by Koppers from July 2014 to March 2019. When he left Koppers, he was an engineering manager. He testified that in 2018, he communicated with City Wide about equipment located on Parcel 39.07 and asked that City Wide remove them. Dvorsky stated that when he started working at Koppers in 2014, he understood through conversations with other Koppers employees that debris from City Wide "kept falling across the concrete [wall]" onto Parcel 39.07. This had been an "ongoing problem" for a couple of years, since 2011 or 2012.

¶ 22    Approximately 6 to 12 months before Koppers renegotiated the lease with the District in 2017, Dvorsky received a survey from the 1960s that set forth the boundaries of Parcel 39.07. He walked around the property to "get an understanding of where the property lines were," but he had difficulty finding the property line on the eastern side because he "had to climb over all of City Wide's garbage." He agreed that by looking at the 1960s survey, one could determine the property

line of Parcel 39.07. He also agreed that if someone had the survey and walked the property with it, he or she could determine whether City Wide was encroaching onto the property.

¶ 23    Bakk, a Koppers employee since 2012, similarly testified that one could identify the property line of Parcel 39.07 from the survey. He stated, however, that before Koppers commissioned a new survey of the property, he assumed the property line was along the wall. After the survey, he understood that the actual property line was behind the wall.

¶ 24    Leonard testified that she was the in-house attorney for Koppers' parent company, and she worked on negotiating the current lease. She stated that Koppers had leased and occupied Parcel 39.07 "for decades." As part of the lease negotiations, Leonard reviewed the survey of the property and the original lease, which Koppers "inherited" in 1989. She testified that Koppers was satisfied with the usable area of the property before it entered into the 2017 lease. Pursuant to section 9.02 of the lease, Koppers agreed to accept the property with all "faults" and improvements.

¶ 25    After discovery, Koppers filed a motion for partial summary judgment on its trespass and nuisance claims. The trial court granted summary judgment on the trespass claim but denied it on the other claims. The court further found that Koppers was entitled to summary judgment on City Wide's affirmative defense of *laches*. It determined "as a matter of law that, given the five-year statute of limitations and the facts presented, asserting a claim one year after becoming aware of the trespass is not a significant delay." The court noted that after the 2018 survey revealed the encroachment, "City Wide was notified of the trespass at least twice" via letters on October 2, 2018, and November 11, 2019. Therefore, City Wide was not significantly prejudiced by the delay.

¶ 26    The trial court subsequently granted Koppers' oral motion to dismiss, with prejudice, the nuisance and negligence counts on which it had denied summary judgment. The order also required

City Wide to remove all equipment and materials from Parcel 39.07 within 60 days of the order. The court's order thus disposed of all remaining claims.

¶ 27 City Wide filed this appeal, as well as a motion to stay enforcement of the judgment pending appeal. After briefing and argument on the motion to stay enforcement, the trial court denied the motion because it "believe[d] that City Wide's likelihood of success on the merits [on appeal] is low," and "the equity issues do not weigh in favor of City Wide."

¶ 28                                II. ANALYSIS

¶ 29 On appeal, City Wide contends that the trial court erred in dismissing its claims of adverse possession and prescriptive easement against the District and Koppers. The trial court granted dismissal under section 2-619(a)(9) of the Code. A motion to dismiss under section 2–619(a)(9) admits the legal sufficiency of the complaint but asserts that the claim is barred by other affirmative matter negating the legal effect of or defeating the claim. *Smith v. Waukegan Park District*, 231 Ill. 2d 111, 120-21 (2008). Here, the trial court granted the dismissal because it determined that allowing City Wide to proceed on its claims of adverse possession and prescriptive easement would render provisions of the Act "ineffective." Where the relief requested is not authorized by statute, affirmative matter exists to support a section 2-619(a)(9) dismissal. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 487 (1994).

¶ 30 In reviewing a section 2–619(a)(9) dismissal, we view the pleadings and supporting documentation in the light most favorable to the nonmoving party. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368 (2003). We also accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55. The trial court's dismissal pursuant to section 2–619 is reviewed *de novo*. *Van Meter*, 207 Ill. 2d at 368.

¶ 31    Our supreme court has long held that statutes of limitations generally do not run against the state with respect to public rights. See *Brown v. Trustees of Schools*, 224 Ill. 2d 184, 186 (1906). This rule is based on the common law principle that because the state must devote time and attention to the cares of government, "there could be no negligence or *laches* on [its] part." *Id.* This rule has been extended "to minor municipalities created by [the state] as local governmental agencies, in respect to governmental affairs affecting the general public." *Id*. at 186-87. However, the rule is extended only in matters "respecting strictly public rights as distinguished from private and local rights." *Id*. at 187. In matters involving private rights, governmental agencies "are subject to statutes of limitation to the same extent as individuals." *Id*.

¶ 32    In *Brown*, our supreme court found that control of the property at issue, a schoolhouse site, was "vested in the directors of a particular district." *Id*. at 189. Additionally, the proceeds from the sale of the property would be paid "to the township treasurer for the benefit of the [local] school district." *Id*. The court therefore concluded that the people of the state had no interest in common with residents of the local school district regarding the property. *Id*. Since the use and rights of the property were "confined to the particular local district," the court held that a private citizen could proceed on his adverse possession claim against school district trustees regarding the schoolhouse site. *Id*.

¶ 33    City Wide and Koppers agree that if Parcel 39.07 is considered property in which the general public has an interest, it is not subject to City Wide's claims of adverse possession and prescriptive easement. They disagree, however, on whether the property is being held for the right and use of the public, both citing *Miller v. Metropolitan Water Reclamation District of Greater Chicago*, 374 Ill. App. 3d 188 (2007) as support.

¶ 34    In *Miller*, the District owned the subject property and leased it to the City of Evanston with

a right of reentry. *Id.* at 189. Evanston, in turn, subleased the property to the Evanston Wilmette Golf Course Association, which operated a golf course on the property. *Id.* In 1971, the plaintiffs purchased a house on land adjacent to the District's property. They discovered that portions of their garage and other parts of their property were built on the District's property. *Id.*

¶ 35    In 1996, the District notified plaintiffs of their encroachment and requested that the City of Evanston take corrective action. The plaintiffs filed a complaint against the District and the City of Evanston, alleging adverse possession of the encroached property. *Id.* The trial court granted summary judgment in favor of the defendants. *Id.*

¶ 36    The issue on appeal was whether the subject property, owned by the District, was property "for the general benefit of the people of the state." *Id.* at 191. If the property was for such "public use," the plaintiffs could not prevail on their adverse possession claim.

¶ 37    To answer that question, the court in *Miller* considered the District's purpose. It noted that the District's predecessor, the Sanitary District of Chicago, was created in 1889 by statute " 'to create sanitary districts, and to remove obstructions in the Des Plaines and Illinois rivers.' " *Id.* quoting *People ex rel. Longenecker v. Nelson*, 133 Ill. 565 (1890). These districts were empowered "to construct and maintain a common outlet for the drainage and sewage of the municipalities within the limits of each district." *Id.* The resulting channel allowed drainage and sewage from the City of Chicago to flow in the direction of the Des Plaines and Illinois Rivers, and also caused a large flow of water from Lake Michigan through the channel which diluted the sewage, " 'rendering it innocuous to the people living along the course of those streams.' " *Id.* quoting *Longenecker*, 133 Ill. at 581. The court found that the creation of the District and the channel was clearly "intended to preserve the health of the people of Chicago, those persons living around Lake Michigan and along the Des Plaines and Illinois rivers, and the people of the state." *Id.*

¶ 38    The court further found that this "public purpose continues today," where the District has been granted " 'police powers to protect the public health' " by preventing the pollution of Lake Michigan and other bodies of water. *Id.* at 191-92 quoting *Village of Glencoe v. Metropolitan Sanitary District of Greater Chicago*, 23 Ill. App. 3d 868, 872 (1974). The court quoted a supreme court case, which found that the District " 'is a municipal corporation, created by legislative authority. It is a part of the machinery of government. Its functions are public. *The property held by such corporation is public property in the hands of the trustees, as agents for the State, for the purposes designated in the act authorizing its creation ***.*' " (Emphasis added.) *Id*. at 192 quoting *Chicago & Eastern Illinois Railway Co. v. Sanitary District of Bloom Township*, 350 Ill. 542, 548 (1932).

¶ 39    The court in *Miller* held that the subject property, owned by the District, was "public property for the use and benefit of the people of the state" and not subject to claims of adverse possession. *Id*. The court also disagreed with the plaintiffs' argument that, pursuant to *Brown*, the property had lost its public use character when it was leased for use as a golf course. The court reasoned that, unlike the schoolhouse site in *Brown*, the golf course was open to all persons in the state. Therefore, the property "retain[ed] its public character" where the people in the state at large "have a continuing general interest in the subject property during the leasehold." *Id*.

¶ 40    Citing *Miller*, City Wide argues that Parcel 39.07 lost its public use character when the District leased the property in 1944 for private industry use. City Wide contends that, unlike the District's property in *Miller*, Parcel 39.07 has never been open to the public for public use. City Wide contends that in leasing parcel 39.07, the District acted in its private capacity and thus made itself subject to adverse possession claims.

¶ 41    We do not read *Miller* to hold that the public use character of the District's property, for

- 12 -

purposes of adverse possession, is lost whenever the District leases its property for private use by the lessee. In that portion of *Miller*, the court was merely responding to the plaintiffs' argument therein. Citing *Brown*, the plaintiffs had argued that the property lost its public use character because it was used as a golf course and was "part of a proprietary business." *Miller*, 374 Ill. App. 3d at 192. In disagreeing with the plaintiffs, the court contrasted the facts in *Brown*, "which involved a school site to which the people of the state at large had no general interest in common with the inhabitants of the school district." *Id.* The court in *Miller* simply found *Brown* distinguishable based on the actual use of the property.

¶ 42    *Brown* never addressed the public use character of property owned by the District because it only considered property owned by school trustees for the use of "School District No. 90." *Brown*, 224 Ill. at 185. Nothing in *Brown*, or the *Miller* court's interpretation of *Brown*, detracts from *Miller*'s clear holding that property "to which the District holds title and to which it retains the right under the lease to reenter, is public property for the use and benefit of the people of the state." *Miller*, 374 Ill. App. 3d at 192.

¶ 43    Importantly, the court in *Miller* did not base its holding on the fact that the property was being used as a golf course open to the public. Instead, the court reached its conclusion after a thorough examination of the District's statutory obligation to protect public health by managing the flow of water and sewage into Lake Michigan and other waters. See *Miller*, 374 Ill. App. 3d at 191-92. The court further relied on our supreme court's finding that, given the District's public function as a municipal corporation, District property was " 'public property *** for the purposes designated in the act authorizing its creation ***.' " *Id.* at 192 quoting *Chicago & Eastern Illinois Railway Co.*, 350 Ill. at 548.

¶ 44    Moreover, we find no evidence in the record that Parcel 39.07 lost its public use character

when the District leased the property to Koppers and its predecessors. The District was created "to preserve the health of the people of Chicago, those persons living around Lake Michigan and along the Des Plaines and Illinois rivers, and the people of the state." *Miller*, 374 Ill. App. 3d at 191. To serve this purpose, the District holds title to property. For example, the Act provides that:

> "[t]he corporate limits of the Sanitary District of Chicago *** may be extended in such manner as may be provided by law to include any area of contiguous territory within the limits of said Cook County wherein the construction, maintenance and operation of sewers and sewage treatment plants and the construction, enlargement and maintenance of outlets for the drainage of the territory will conduce to the preservation of the public health." 70 ILCS 2605/1 (West 2022).

The District thus operates and manages 554 miles of intercepting sewers and 76 miles of navigable waterways. The District also manages stormwater in Cook County though TARP, which reduces flooding, improves the water quality of Chicago area waterways, and protects Lake Michigan from pollution caused by sewer overflows. TARP consists of four tunnel systems totaling 109 miles.

¶ 45 As noted above, Parcel 39.07 borders the Main Channel and contains the following District infrastructure: 1) Southwest Side Intercepting Sewer #1 and a manhole for access; 2) Laramie Avenue Outfall Sewer and an associated Tide Gate structure; 3) a District monitoring well; and 4) a storm drain servicing adjacent Edmier Road, which discharges into the Main Channel. Although the District has leased Parcel 39.07 to Koppers and Koppers' predecessors since 1944, the District's leases have consistently referenced this infrastructure on the property and reserved its "perpetual" right to construct, maintain, operate, repair and reconstruct any drains or structures in furtherance of its corporate purpose. The District, under the leases, retained its right to enter upon and use the property as necessary to further its purpose. Each lessee also agreed not to erect

structures on the property or perform work on the property in a way that would damage the District's existing infrastructure. The mere fact that the District leased Parcel 39.07 to Koppers to conduct its private business did not cause the property to lose its public use character.

¶ 46     Furthermore, as this case illustrates, allowing adverse possession and prescriptive easement claims against the District would negate the purpose for which the District was created to serve. For example, the current lease requires Koppers to "participate in a pilot program to be designed and overseen by Argonne National Labs whereby trees will be installed and cultivated onsite in an effort to remediate existing surface and subsurface contamination at the site." However, the area where this plan was to be implemented includes property encroached upon by City Wide. Due to the encroachment, and City Wide's refusal to vacate the property, Koppers has not been able to implement a plan that was clearly intended to benefit the public health. To serve its function, the District must be assured that it can use its hundreds of miles of property in a manner that furthers its corporate purpose, without concern that another party may claim title to portions of District property by adverse possession or prescriptive easement.

¶ 47     We agree with *Miller* and find that Parcel 39.07, which the District owns and retains the right to reenter under the lease, is property for public use and not subject to claims of adverse possession or prescriptive easement. See also *J & A Cantore, LP v. Village of Villa Park*, 2017 IL App (2d) 160601, ¶¶ 91-92 (interpreting *Miller* as holding that, pursuant to the purpose for which the District was created, property to which the District holds title and retains a right to reenter under the lease is property for the use and benefit of people in the state). As such, the trial court did not err in dismissing City Wide's claims of adverse possession and prescriptive easement.[1]

---

[1]   We note that the Act expressly permits the District to "grant easements and permits for the use of any such real property" which will not interfere with the District's use of the property. 70 ILCS 2605/8 (West

¶ 48 City Wide also contends that the trial court erred in granting summary judgment in favor of Koppers on City Wide's trespass claim and its affirmative defense of *laches*. Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2–1005(c) (West 2022). The trial court's grant of summary judgment is reviewed *de novo*. *Peddinghaus v. Peddinghaus*, 314 Ill. App. 3d 900, 906–07 (2000).

¶ 49 City Wide acknowledges that its trespass argument has merit only if City Wide prevails on its adverse possession and prescriptive easement claims. Since we have affirmed the trial court's dismissal of those claims, it follows that City Wide's trespass argument also fails. Therefore, we will address only City Wide's contention regarding its affirmative defense of *laches*.

¶ 50 "*Laches* is an equitable doctrine which precludes the assertion of a claim by a litigant whose unreasonable delay in raising that claim has prejudiced the opposing party." *Tully v. State*, 143 Ill. 2d 425, 432 (1991). To prevail on the affirmative defense of *laches*, the defendant must prove 1) a lack of due diligence by the complainant in bringing the action, and 2) the resulting delay caused prejudice to the defendant. *Lozman v. Putnam*, 379 Ill. App. 3d 807, 822 (2008).

¶ 51 Courts are reluctant to apply the doctrine of *laches* "to public bodies under usual circumstances." *Hickey v. Illinois Central Railroad Co.*, 35 Ill. 2d 427, 447 (1966). However, the doctrine has been applied to the state when acting in a proprietary capacity, and not in a governmental capacity. *Id*. at 448. Even when acting in a governmental capacity, the state is not

---

2022). A prescriptive easement, however, is established after at least 20 years of exclusive, continuous and *adverse* use. (Emphasis added.) *Nationwide Financial, LP v. Pobuda*, 2014 IL 116717, ¶ 28. Our determination applies only to prescriptive easement claims against the District.

completely immune from *laches* under all circumstances. *Id*. The doctrine applies in extraordinary circumstances where government officials engaged in positive acts that induced the defendant to act. *Id*. at 448-49. Mere nonaction by government officials is insufficient to support *laches* against the state. *Id*.

¶ 52    As we have already established, the District is a municipal corporation created by statute. Therefore, we first must determine whether the District was acting in a proprietary or governmental capacity when it leased Parcel 39.07 to Koppers.

¶ 53    Although City Wide argues that the District was acting in its proprietary capacity, we disagree. Pursuant to the Act, the District is authorized to lease to others "any such real property, right-of-way or privilege, or any interest therein or any part thereof, which is in the opinion of the board of trustees and executive director of the sanitary district no longer required for its corporate purposes or which may not be immediately needed for such purposes." 70 ILCS 2605/8 (West 2022). The negotiations and executions of these leases must comply with section 8(c) of the Act. *Id*. Section 8(c) provides, in lengthy detail, the steps that must be taken and the requirements that must be met when the District leases its property. See 70 ILCS 2605/8(c) (West 2022). In other words, the District is not free to stray from its purpose under the Act when negotiating and executing leases of District property. Leasing its property to others is a corporate function of the District as set forth in the Act. Therefore, it acts in its governmental capacity when doing so.

¶ 54    For *laches* to apply, there must be allegations that the District engaged in positive conduct that induced City Wide to act to its detriment. *Hickey*, 35 Ill. 2d at 448-49. In raising the affirmative defense of *laches*, City Wide has not alleged any positive acts on the part of the District or Koppers. It only argues that they must have had constructive knowledge of City Wide's encroachment based on the existing surveys of the property but failed to act. To assert *laches* against the District, it is

not sufficient to allege mere inaction. *Hickey*, 35 Ill. 2d at 448. Where a party fails to establish an element of its claim, summary judgment is appropriate. *Dardeen v. Kuehling*, 213 Ill. 2d 329, 335 (2004). Accordingly, the trial court did not err in granting summary judgment against City Wide on its affirmative defense of *laches*.

¶ 55    At the end of its brief, City Wide argued that the trial court's order requiring City Wide to remove its equipment and materials from the encroachment area should be reversed. City Wide, however, provided no additional argument or citation to authority to support its contention. Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) provides that an appellant's argument "shall contain contentions of the appellant and the reasons therefor, with citation of the authorities *** relied on." Rule 341(h)(7) requires both argument and citation to relevant authority. "An issue that is merely listed or included in a vague allegation of error is not 'argued' and will not satisfy the requirements of the rule." *Vancura v. Katris*, 238 Ill. 2d 352, 370 (2010). Arguments that fail to comply with Rule 341(h)(7) are thus forfeited. *Trilisky v. City of Chicago*, 2019 IL App (1st) 182189, ¶ 54.

¶ 56                                III. CONCLUSION

¶ 57    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 58    Affirmed.